State v. Furley 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-94-207-CR

Â Â Â Â Â THE STATE OF TEXAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â EDMUND NORMAN FURLEY,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the County Court at Law
Brazos County, Texas
Trial Court # 2701-93
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â The State appeals from an order granting Norman Furley's motion to suppress evidence and
brings two points of error. Point one asserts that Furley's statement that a gun was in his car was
not the result of an illegal detention and was not obtained in violation of Miranda,


 the United
States Constitution or the Texas Constitution. The State, in point two, asserts that the arrest of
Furley and seizure of other evidence did not violate the state or federal constitutions.
Â Â Â Â Â Â On September 27, 1994, an officer who was participating in a state-funded grant to enforce
the safety belt law observed Furley's failure to buckle up and pulled him over. After the officer
had informed Furley of the purpose of the detentionâi.e., violation of the seat belt lawâand
obtained Furley's driver's license and insurance information, he asked him, "Is there anything in
the car that I need to know about?" Furley truthfully responded, "Yes sir, I have a pistol under
my seat." The officer, who then asked Furley to step out of the car, retrieved a nine-millimeter
Berretta from under the driver's seat and arrested Furley.
Â Â Â Â Â Â Furley was charged with unlawfully carrying a handgun. He filed a motion to suppress his
statement and the gun, arguing that both were obtained in violation of the United States and Texas
constitutions. The arresting officer was the only witness at the suppression hearing. He did not
testify that Furley's actions caused him to fear for his safety; rather, he testified that Furley's
"unusual actions" created a reasonable suspicion that he had some type of contraband in the car. 
Â Â Â Â Â Â Furley conceded that the initial stop was lawful. However, he argued that the officer further
detained him and continued to investigate a different matter after the traffic-stop detention was
completed. He claimed that such investigation was without probable cause or reasonable suspicion
and that the evidence obtained from it is inadmissible. The court granted Furley's motion to
suppress.


 
Â Â Â Â Â Â On appeal of a suppression hearing, we consider only the question of whether the court
improperly applied the law to the facts. See Banda v. State, 890 S.W.2d 42, 52 (Tex. Crim. App.
1994). We do not disturb the court's factual findings if they are supported by the evidence. Id.
at 51-52. 
Â Â Â Â Â Â The validity of a seizure pursuant to a traffic stop is analyzed under Terry v. State of Ohio.


 
Goodwin v. State, 799 S.W.2d 719, 727-28 (Tex. Crim. App. 1990), cert. denied, 501 U.S. 1259,
111 S.Ct. 2913, 115 L.Ed.2d 1076 (1991). To comport with the Fourth Amendment to the United
States Constitution, an officer's action must be justified at its inception and must be reasonably
related in scope to the circumstances that justified the interference in the first place. Terry v. State
of Ohio, 392 U.S. 1, 19-20, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968). 
Â Â Â Â Â Â As already noted, Furley concedes that the officer was justified in the initial stop. He
admitted that he had forgotten to fasten his seat belt. However, he argues that the officer's
additional questioning was not reasonably related in scope to the purpose for the stop because the
officer had already obtained all necessary information. "The scope of [a] search must be strictly
tied to and justified by the circumstances which rendered its initiation permissible." Florida v.
Royer, 460 U.S. 491, 500, 103 S.Ct. 1319, 1325, 75 L.Ed.2d 229 (1983). An investigative
detention must be temporary and last no longer than to effectuate the purpose of the stop. Id. One
court has held that an officer conducting a routine traffic stop may request a driver's license and
vehicle registration, run a computer check of the information, and issue a citation, but when the
driver has produced the information, he must be allowed to proceed on his way, without being
subject to further delay by police for additional questioning. U.S. v. Guzman, 864 F.2d 1512,
1519 (10th Cir. 1988). 
Â Â Â Â Â Â To justify further detention for questioning, an officer must have a reasonable suspicion of
illegal transactions in drugs or another serious crime. Royer, 460 U.S. at 498-99, 103 S.Ct. at
1324. The officer must be able to point to specific and articulable facts which, taken together with
rational inferences from those facts, reasonably warrant the detention. Terry, 392 U.S. at 21, 88
S.Ct. at 1880. Facts are judged against an objective standard;


 hunches are insufficient. 
Â Â Â Â Â Â Furley maintains that the officer's asking, "Is there anything I need to know about?," 
exceeded the scope which justified the initial interferenceâi.e., the seat-belt violation. 
Additionally, he asserts that there were no articulated facts to create a reasonable suspicion under
the objective test, and that the officer was not entitled to investigate beyond the seat-belt violation. 
Â Â Â Â Â Â The officer testified at length, explaining the chronology of events and Furley's actions that
he claims raised a reasonable suspicion to warrant further questioning. The officer testified that
Furley's voice inflection and posture indicated that he was nervous. He described Furley's
actions:
[H]is upright seated position with his upper body turned to the left with his hands on top of
the door, bringing his hands forward in front of his face, rotating his hands, asking
permission to go to certain areas of the car after I'd already asked him to retrieve that item. 
The officer testified that Furley's actions caused him to have a reasonable suspicion that something
was in the car. However, he admitted that he did not have any idea what that something might be. 
He also testified that Furley's actions, taken independently, would not raise a suspicion of criminal
activity, but that he had "run into this type of situation with other persons that have been in my
experienceâthat I've later found out they've spent a large time in a state penitentiary." 
Â Â Â Â Â Â Whether the continued questioning was "strictly tied to" the detention for the seat-belt
violation, and whether Furley's actions would have objectively created a reasonable suspicion are
both questions of fact for the trier of fact. The trial judge is the sole trier of fact and judge of the
credibility of the witnesses at a suppression hearing. Romero v. State, 800 S.W.2d 539, 543 (Tex.
Crim. App. 1990). This court will not disturb the trial court's findings so long as they are
supported by the record. See id.
Â Â Â Â Â Â The evidence supports the court's implied finding that the further detention and questioning
of Furley, after the officer had received all necessary information pertaining to the seat-belt stop,
was not related to the initial traffic stop and was not based on a reasonable suspicion. Therefore,
we find no error in the court's granting the motion to suppress. See Wong Sun v. United States,
371 U.S. 471, 485, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963); Banda, 890 S.W.2d at 51-52. 
Â Â Â Â Â Â Points one and two are overruled, and the judgment is affirmed. 
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BOB L. THOMAS
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Before Chief Justice Thomas,
Â Â Â Â Â Â Â Â Â Â Justice Cummings, and
Â Â Â Â Â Â Â Â Â Â Justice Vance
Affirmed
Opinion delivered and filed August 23, 1995
Do not publish



ited in the
Oil and Gas Lease dated December 18, 2004?

Â 

   In deciding whether the
Shannons and Paul Peyton Barbee reached an agreement, you may consider what
they said and did in light of the surrounding circumstances, including any
earlier course of dealing.Â  You may not consider the partiesÂ unexpressed
thoughts or intentions.

Â 

Answer ÂYesÂ or ÂNoÂ

Â 

Answer: Â Â Â Â Â Â YESÂ Â Â Â Â  

Â 

Â 

Â 

Â 

QUESTION NO. 2

Â 

Â Â Â Â Â Â Â Â Â Â Â  Did Paul Peyton Barbee
fail to comply with the Oil and Gas Lease dated December 18, 2004?

Â 

Â Â Â Â Â Â Â Â Â Â Â  You are instructed that
compliance with an agreement must occur within a reasonable time under the
circumstances unless the parties agreed the compliance must occur within a
specified time and the parties intended compliance within such time to be an
essential part of the agreement.

Â 

In determining whether the parties
intended time of compliance to be an essential part of the agreement, you may
consider the nature and the purpose of the agreement and the facts and
circumstances surrounding its making.

Â 

Answer ÂYesÂ or ÂNoÂ

Â 

Answer: Â Â Â Â Â Â NOÂ Â Â Â Â  

Â 

Â Â Â Â Â Â Â Â Â Â Â  Question 3 asked if the Shannons failed to comply with the lease and was conditioned on a ÂyesÂ answer to Question
2; the jury thus did not answer it.

The Shannons tendered a series of
special-issue type questions.Â  During the informal charge conference, the trial
court referred to them as Ânarrow-formÂ and said that they were Ânot
appropriate.ÂÂ  In the formal charge conference, the trial court asked the
parties for objections, and the ShannonsÂ attorney stated, ÂNone.ÂÂ  ÂObjections
must be made before the charge is read to the jury.ÂÂ  Frost Crushed Stone Co.
v. Odell Gear Constr. Co., 110 S.W.3d 41, 47 (Tex. App.ÂWaco 2002, no
pet.).Â  We therefore must agree with Barbee that the Shannons have not
preserved any charge complaints for appeal.[1]Â 
See Tex. R. Civ. P. 274; cf.
Bluestar Energy, Inc. v. Murphy, 205 S.W.3d 96, 101 (Tex. App.ÂEastland
2006, pet. denied).Â  Thus, we will not review the ShannonsÂ issues relating to
their unpled and unsubmitted affirmative defenses.Â  We will review their
complaints that the evidence is legally and factually insufficient to show that
the drafts were timely paid or extended to satisfy the leaseÂs condition
precedent because we believe that whether the time period to pay the drafts was
extended was subsumed into Questions 1 and 2.[2]

Â Â Â Â Â Â Â Â Â Â Â  Barbee, the Bank teller,
and the Bank president all gave clear and compelling testimony about the
ShannonsÂ oral extensions of the time period to pay the drafts, and the ShannonsÂ conduct matched the occurrence of the extensions.Â  The BankÂs records evidence
the extensions.Â  The evidence plainly was legally sufficient, and the ShannonsÂ remarkable testimony that they did not extend the time period, standing alone,
does not justify our finding that it is contrary
to the overwhelming weight of the evidence

On the ShannonsÂ claim that the
evidence is legally and factually insufficient to show acceptance of BarbeeÂs
tender of payment, it is true that the Shannons refused to accept the cashierÂs
checks from his bank (Frost).Â  But Barbee had until June 4, 2005 to pay the
drafts, and it is undisputed that those checks arrived at Normangee State Bank,
the collecting bank on the drafts, a day or two after May 16, and the Bank accepted
and endorsed them.Â  According to the language on the drafts, Barbee and the
Shannons appointed the Bank Âescrow
agent to hold this draft for the time above specified subject alone to
acceptance of payment hereof by the drawer, within said time, and without any
right of the drawer, payee or endorser hereof, or said grantors, to recall or
demand return of this draft prior to the expiration of the above specified
time.ÂÂ  We agree with Barbee that the Shannons could not have refused to accept
BarbeeÂs timely tender of payment.Â  We overrule the ShannonsÂ second issue.

The ShannonsÂ third issue asserts that
the trial court abused its discretion by submitting the declaratory judgment
action to the jury as a breach of contract action.Â  As we held above, they did
not preserve their charge complaints for appeal.Â  This complaint should have
been made at the charge conference before the charge was read to the jury.Â 
Otherwise, as we stated above, we believe that the controlling issue relating
to whether the drafts were timely paid or extended to satisfy the leaseÂs
condition precedent was subsumed into the inartfully worded Questions 1 and 2
because the draftÂs condition precedent language must be construed along with
the lease.Â  Our review of the record, including the informal and formal charge
conferences and closing arguments, leaves no doubt that the trial court and the
parties understood that Questions 1 and 2 involved whether the condition
precedent was satisfied.Â  We overrule
issue three.

Conclusion

Having overruled all of the ShannonsÂ issues, we
affirm the trial courtÂs judgment.

Â 

BILL VANCE

Justice

Â 

Â 

Before Chief Justice
Gray,

Â Â Â Â Â Â Â Â Â Â Â  Justice Vance,
and

Â Â Â Â Â Â Â Â Â Â Â  Justice Reyna

(Chief
Justice Gray concurs in only the judgment which affirms the trial courtÂs
judgment.Â  A separate opinion will not be issued.)

Affirmed

Opinion delivered and
filed March 26, 2008

[CV06]









[1] Â Â Â Â Â Â Â Â Â Â Â Â Â  Even if the Shannons preserved
their charge complaints for appeal, none of their tendered questions on the
merits involved a controlling issue on which there was a factual dispute.Â  At
least one question involved an affirmative defense (statute of frauds) that the
 Shannons had not pled but that they now claim was tried by consent.Â  However,
the Shannons did not assert at the charge conference that their affirmative
defenses were tried by consent.Â  In any event, the Shannons point to no law
that the statute of frauds applies to the alleged extensions, while several
cases hold that an agreement or consent to an extension of time for payment may
be oral.Â  See, e.g., C & G Coin Meter Supply Corp. v. First NatÂl Bank,
413 S.W.2d 151, 154 (Tex. Civ. App.ÂEastland 1967, writ refÂd n.r.e.); Mizell
Constr. Co. & Truck Line, Inc. v. Mack Trucks, Inc., 345 S.W.2d 835, 837-38
(Tex. Civ. App.ÂHouston 1961, no writ); see also Frost Crushed Stone Co. v. Odell Gear Constr. Co., 110 S.W.3d 41, 47 (Tex. App.ÂWaco 2002, no pet.)
(discussing use of promissory estoppel to bar application of statute of frauds
and allow enforcement of otherwise unenforceable oral promise).Â  Also,
BarbeeÂs payment of DonÂs $100 subordination fee could be consideration for one
or more of the extensions.

Â 





[2] Â Â Â Â Â Â Â Â Â Â Â Â Â  In reviewing the
legal sufficiency of the evidence, we view the evidence in the light most
favorable to the verdict, crediting favorable evidence if reasonable jurors
could, and disregarding contrary evidence unless reasonable jurors could not.Â  City of Keller v. Wilson, 168 S.W.3d
802, 807, 822 (Tex. 2005).Â  There is legally insufficient evidence or Âno
evidenceÂ of a vital fact when (a) there is a complete absence of evidence of a
vital fact; (b) the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact; (c) the evidence
offered to prove a vital fact is no more than a mere scintilla; or (d) the
evidence conclusively establishes the opposite of the vital fact.Â  Merrell Dow Pharms., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997).

In a factual sufficiency review,
we consider and weigh all of the evidence, not just the evidence that supports
the verdict.Â  Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex. 1998); Checker Bag Co. v. Washington, 27 S.W.3d 625, 633 (Tex. App.ÂWaco 2000,
pet. denied).Â  We will set aside the finding only if it is so contrary to the
overwhelming weight of the evidence that the finding is clearly wrong and
unjust.Â  Ellis, 971 S.W.2d at 407.Â  Reversal can occur because the
finding was based on weak or insufficient evidence or because the proponent's
proof, although adequate if taken alone, is overwhelmed by the opponent's
contrary proof.Â  Checker Bag, 27 S.W.3d at 633.